**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMY TROTT, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE FARMER'S DOG, INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

This class action complaint is brought by Plaintiff Amy Trott ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), against Defendant The Farmer's Dog, Inc. ("Defendant"). The allegations set forth below are based on personal knowledge as to Plaintiff's own acts and on investigation conducted by counsel as to all other allegations.

## PARTIES

1. Plaintiff Amy Trott is a citizen and resident of New Hampshire.

2. Defendant The Farmer's Dog, Inc. is a Delaware corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendant, and (4) there are more than 100 Class members.

4. This Court has general personal jurisdiction over Defendant because Defendant is a resident of this state.

1

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district.

## FACTUAL ALLEGATIONS

6.      Defendant sells dog food that is marketed as fresh and human grade through an online subscription service.

7.      During the registration process, customers are asked to input basic information about their dog, such as breed, age, and weight and are then shown numerous representations about the health benefits of Defendant's dog food.[1]

> **[Your Dog's] Recommended Plan**
>
> Based on your responses, we recommend these fresh, balanced recipes for [your dog]. They're all made with highly digestible human grade meat and fresh vegetables and are ideal for [your dog's] nutritional needs.
>
> **Lasting Health Benefits**
>
> Here are a handful of the improvements you can expect when you start to add fresh, real food to your dog's diet: better digestion, stronger immune systems, healthier skin and coats, and increased vitality.
>
> **Vet Formulated**
>
> Why should pets eat highly processed food for every meal of their lives? We partnered with veterinary nutritionists to create fresh, healthy recipes that contain all of the vitamins and nutrients that dogs need to thrive.

8.      Defendant repeatedly represents and induces consumers into believing that its dog food is "complete," "balanced," "healthy," "[d]riven by science," and provides "Clinically Proven Nutrition."[2]

---

[1] https://www.thefarmersdog.com/signup/me/GetStarted
[2] https://www.thefarmersdog.com/

9.      Defendant conceals and omits material information about whether its dog food meets specific dietary needs of dogs, including minimum and maximum nutrient levels in balanced and healthy dog foods.

10.      Defendant's representations and omissions emphasize to consumers that its dog food is inherently better than other dog foods because it is "fresh," "real," and "human grade," while deemphasizing the specific levels of nutrients that help keep dogs healthy.

11.      Defendant's representations and omissions seek to induce consumers into believing that "fresh," "real," and "human grade" dog food will support their dog's health and that ensuring that a dog food has appropriate nutrient levels is not as important.

12.      Defendant does not make nutrition labels for its dog food recipes available to consumers on its website until a person has begun the registration process.

13.      Rather, Defendant's public information about specific nutrient levels is substituted with vague representations about the ingredients used in the food that are meant to make owners feel good about giving the food to their dog.[3]

> In your dog's food, as in your own, ingredients do matter; they're the building blocks of a daily diet. Every recipe from The Farmer's Dog is made from fresh, whole, human-grade ingredients—that means food safe enough for a human to eat. Our recipes are carefully formulated by board-certified nutritionists to provide the right amount, and balance, of protein, fat, fiber, and vitamins and minerals to sustain your dog's health and vitality over their whole life. Because our ingredients include real, whole meat and vegetables, and the ingredients are lightly cooked, the food is highly digestible, meaning your dog's body can absorb, and use, the nutrients each ingredient provides.
>
> Ultra-processed dog foods like kibble typically start out with subpar ingredients—most kibble only qualifies as animal "feed," so it contains leftovers from the process of making human food. And due to regulatory loopholes, other stuff can end up in there as well, including so-called 4D meats (diseased, disabled, dying, and dead

---

[3] https://www.thefarmersdog.com/digest/farmers-dog-ingredients-recipes/

animals) as long as they are turned into powder (the "meals" you see on pet food labels) via a process called rendering. But even if these dry foods advertise high-quality, or even human-grade, ingredients on their labels, the food in the bag is still subject to multiple rounds of high-pressure, high-heat processing that destroys a significant amount of the nutritional value the ingredients may have had (palatants and vitamins are sprayed on after the kibble bits have been processed). Further, most kibble is made in factories that aren't subject to the same safety and quality standards that apply to human-grade food (so, again, even if any given ingredient is human-grade, the recipe can't qualify as human-grade if it was made in a pet-food facility to the standards of animal feed).

Our recipes are formulated so that all the ingredients work together to provide exactly what dogs need, based on veterinary nutrition science.

14.    Defendant also advertises that its recipes are formulated by its on-staff board-certified companion animal nutritionists and board-certified veterinary nutritionists.[4]

15.    Defendant's marketing of its on-staff nutritionists seeks to induce consumers into believing that a veterinary professional has determined that Defendant's dog food is safe and healthy for their dog.

16.    Defendant emphasizes that its recipes formulated by on-staff nutritionists are formulated to account for a dog's health issues and nutritional needs.

Dr. Streeter, too, emphasizes dogs' individuality, and the importance of feeding them formulas suitable for their nutritional needs. "No one can make a one-size-fits-all dog food," she says.[5]

17.    Defendant claims that its dog food is personalized for each customer:

A vet-designed plan is customized to your dog's individual needs. Meals are pre-made and pre-portioned to their calorie needs based on the profile you create.[6]

---

[4] https://www.thefarmersdog.com/digest/meet-our-on-staff-board-certified-nutritionists/
[5] https://www.thefarmersdog.com/digest/meet-our-on-staff-board-certified-nutritionists/
[6] https://www.thefarmersdog.com/

18.     Thus, when a consumer registers for The Farmer's Dog, inputs basic information about their dog, and is recommended dog food formulated by Defendant's on-staff nutritionists, they reasonably believe that the food was formulated to meet their dog's nutritional needs.

19.     Defendant's registration process seeks to induce consumers into believing that its dog food is safe for each consumer's dog, accounting for the dog's breed, age, and weight.

20.     Defendant of course does not claim to be customers' personal veterinarians.

Of course, for questions about your dog's health, ask your vet.[7]

21.     But Defendant never suggests that a veterinarian should approve the use of their dog food and analyze the nutritional content to ensure that it is safe and healthy for a typical dog.

22.     Reasonable consumers understand that all dog foods come with risks of adverse reactions from unknown allergies or medical issues and that no off-the-shelf dog food could meet their dog's optimal nutritional needs exactly.

23.     Reasonable consumers understand that dog foods come with trade-offs among price, quality, and nutrition.

24.     Reasonable consumers do not understand the specific nutritional needs of dogs and instead rely on dog food companies like Defendant that warrant the quality and nutrition of their dog foods.

25.     Reasonable consumers expect that a dog food marketed toward the general public as balanced and nutritious would be formulated to come reasonably close to typical dogs' nutritional needs and not be formulated in a manner that is grossly out of line with typical dogs' nutritional needs because, unlike human food, a single dog food product is intended to be 90% or more of what a dog consumes.

---

[7] https://www.thefarmersdog.com/digest/meet-our-on-staff-board-certified-nutritionists/

26.     Reasonable consumers expect that a dog food marketed for dogs with certain medical issues would be formulated to come reasonably close to such dogs' nutritional needs and not be formulated in a manner that is grossly out of line with such dogs' nutritional needs.

27.     Reasonable consumers cannot foresee that they should consult a veterinarian before feeding their dog a dog food that is marketed toward the general public as balanced and nutritious.

28.     Reasonable consumers cannot foresee that a dog food marketed toward the general public as balanced and nutritious would have such excessive fat levels that it could trigger severe medical issues in otherwise healthy dogs.

29.     Only after reaching the registration page are consumers offered a selection of recipes to choose from, though Defendant suggests that consumers use the "recommended" recipes.[8]

30.     The available recipes for turkey, beef, chicken, and pork range in fat content from 4.5% to 8%.

31.     However, these numbers can be misleading, because they are displayed on an "as fed" basis, meaning as a percent of the mass of the food when fed, including moisture content.

32.     The appropriate measure against which to compare nutrient levels is the "dry matter" ("DM") meaning the amount of the nutrient as a percent of the dry mass of the food.

33.     The dry matter percentage of a nutrient is calculated by dividing the percent as fed by the percent dry matter of the food, which in turn is calculated by subtracting the percent moisture from 100%.

34.     Fat content may also be expressed as a percentage of the total metabolizable energy ("ME") of the dog food, taking into account that fat has 9 kcal per gram.[9]

---

[8] https://www.thefarmersdog.com/signup/me/GetStarted
[9] https://www.nal.usda.gov/programs/fnic

35.     Below is a breakdown of the fat content of four of Defendant's dog food recipes:

| Recipe | Moisture | DM | kcal/kg | Fat (as fed) | Fat (DM) | Fat (ME) | Fat (g/1000 kcal) | Protein (as fed) | Fat to Protein Ratio |
|---|---|---|---|---|---|---|---|---|---|
| **Turkey** | 76% | 24% | 1,240 | 4.5% | 18.75% | 32.7% | 36.3 | 8% | 56.25% |
| **Beef** | 72% | 28% | 1,590 | 8% | 28.57% | 45.3% | 50.3 | 11% | 72.73% |
| **Chicken** | 76% | 24% | 1,300 | 6% | 25% | 41.5% | 46.2 | 11% | 54.55% |
| **Pork** | 75% | 25% | 1,370 | 6.5% | 26% | 42.7% | 47.4 | 9% | 72.22% |

36.     Most dog food labels in the United States have a guaranteed analysis label based on Association of American Feed Control Officials ("AAFCO") guidelines which require a statement of the minimum fat content in the food.[10]

37.     Thus, the breakdown above expresses only the *minimum* levels of fat in Defendant's dog foods, not necessarily the actual amounts delivered to customers.

38.     Fat is more calorie-dense than proteins or carbohydrates, so adding fat to dog food is an easy way to meet a dog's calorie needs with smaller quantities of ingredients.[11]

39.     But too much fat in dog food is unhealthy and dangerous for dogs.

40.     "[W]hen diets high in total fat are formulated, care must be taken to ensure the adequate intake of protein, minerals, and vitamins. Proper formulation of diets containing fat thus requires adjustment for its high energy value."[12]

41.     "Dogs can be maintained by feeding dry-type diets containing 5 to 8 percent total fat in dry matter."

---

[10] https://www.aafco.org/resources/startups/nutritional-labeling/
[11] https://www.nal.usda.gov/programs/fnic
[12] https://www.scribd.com/document/650285654/Nutrient-Requirements-of-Dogs-and-Cats

42.   The minimum recommended level of fat in adult maintenance dog food is 11.7% ME or 5.5% DM.[13]

43.   The typical or recommended crude fat content of dog food should be about 8-20%, though dog foods with crude fat content of 16-20% are typically recommended only for highly active working or sporting dogs:

a.   "The recommended ideal crude fat in dog food is 10-15% for adults and 15-20% in growing puppies (at the lower end for large and giant breed dogs)."[14]

b.   "Low fat diets (diets containing 5-10% fat) are advised for those who need to restrict their fat intake due to medical issues such as pancreatitis. Most adult dogs will eat a diet containing about 10-15% fat."[15]

c.   "Crude fat should only make up 8% to 18% of the dog food."[16]

d.   "The recommended amount of fat for young, active adults is 8-20% of dry matter. Mature adults are more likely to gain excess weight, and so this should drop to 8-15%, with those with low activity levels or prone to obesity using the lower end at 8-10% dry matter."[17]

e.   "Generally a diet with less than 10% fat or less than 17% of calories from fat is considered to be low-fat. Meanwhile diets with 10-15% fat, or 17-23% of calories from fat are considered to contain a moderate amount of fat. Diets with more than 20% fat are considered high-fat."[18]

f.   "Puppies need about 30% protein and 15% fat. Adult dogs need about 20% protein and 10-15% fat. Active/working dogs need about 30% protein and 20% fat."[19]

g.   "Most active dog diets contain higher levels of fat than a diet designed for the average dog. Some diets designed for active dogs may contain 16% fat or even more."[20]

---

[13] https://www.scribd.com/document/650285654/Nutrient-Requirements-of-Dogs-and-Cats
[14] https://vitapet.com/au/vitapet-central/articles/fat-in-dog-food/
[15] https://wagwalking.com/wellness/what-percentage-of-a-dogs-diet-should-be-fat
[16] https://www.dogster.com/dog-nutrition/what-is-crude-fat-in-dog-food
[17] https://vethelpdirect.com/vetblog/2022/10/13/how-much-fat-do-dogs-actually-need-in-their-diet/
[18] https://www.foundanimals.org/your-low-fat-dog-food-buying-guide/
[19] https://pupford.com/blogs/all/guaranteed-analysis-dog-treats
[20] https://bsmpartners.net/insights/feeding-and-caring-for-your-active-dog/

44.    "High-fat diets have long been suggested as a risk factor for pancreatitis in dogs based on early studies showing that high-fat diets induce or worsen the severity of pancreatitis in dogs."[21]

45.    Studies have found that diets with total fat above 70% ME have induced hypertension, obesity, and pancreatitis in otherwise healthy dogs.[22]

46.    Studies of high-fat diets over 60% fat ME have shown induced acute pancreatitis,[23] while studies of lower-fat diets below 40% fat ME have tended to show less incidence of acute pancreatitis.[24]

47.    In a study in which dogs were fed a diet with 26.3% fat DM, 2 out of 50 dogs developed pancreatitis within 2 months.[25]

48.    Some breeds, such as Yorkshire Terriers, are more susceptible to acute pancreatitis.[26]

49.    Dog foods with appropriate levels of fat do not induce acute pancreatitis in otherwise healthy dogs.

50.    A dog food that has a fat content that creates a substantially increased risk of acute pancreatitis in otherwise healthy dogs is unreasonably dangerous.

---

[21] https://www.researchgate.net/publication/361411155_Risk_Factors_and_Clinical_Presentation_in_Dogs_with_Increased_Serum_Pancreatic_Lipase_Concentrations-A_Descriptive_Analysis; https://www.researchgate.net/publication/338460214_Metabolic_and_Immunological_Effects_of_Intermittent_Fasting_on_a_Ketogenic_Diet_Containing_Medium-Chain_Triglycerides_in_Healthy_Dogs

[22] https://www.scribd.com/document/650285654/Nutrient-Requirements-of-Dogs-and-Cats

[23] https://www.researchgate.net/publication/334596355_Diet_and_canine_pancreatitis

[24] https://www.researchgate.net/publication/338460214_Metabolic_and_Immunological_Effects_of_Intermittent_Fasting_on_a_Ketogenic_Diet_Containing_Medium-Chain_Triglycerides_in_Healthy_Dogs

[25] https://www.researchgate.net/publication/360565809_New_insights_into_the_etiology_risk_factors_and_pathogenesis_of_pancreatitis_in_dogs_Potential_impacts_on_clinical_practice

[26] https://www.researchgate.net/publication/13401037_Evaluation_of_risk_factors_for_fatal_acute_pancreatitis_in_dogs

51.     Fat is added to dog foods not just to meet nutritional goals, but to make it more palatable,[27] thus increasing the dog's satisfaction when eating and instilling in the dog owner a feeling that the food is right for the dog.

52.     Fat is cheaper per calorie than typical proteins or carbohydrates used in dog foods.

53.     Three out of four of Defendant's recipes detailed above have over 25% fat DM, over 40% fat ME, and over 45 g fat per 1000 kcal, which is well above typical or recommended levels of fat for most dogs.

54.     Defendant adds excessive amounts of fat to its dog food to make it more palatable and calorie dense in an attempt to increase consumer satisfaction while decreasing costs.

55.     Defendant marketed their dog food as generally able to meet the nutritional needs of dogs when the dog's information, including breed, age, and weight, is entered on their website.

56.     Defendant does not warn customers that its dog food has substantially higher than typical levels of fat or that dogs at substantially increased risk of acute pancreatitis from eating Defendant's dog food.

57.     Defendant's registration process does not ask customers if their dog is predisposed to pancreatitis.

58.     Defendant's registration process does not modify recipe recommendations for dog breeds that are predisposed to pancreatitis.

59.     That a dog food is generally able to meet their dog's nutritional needs and does not present an unreasonable risk of disease is material to reasonable consumers.

---

[27] https://nap.nationalacademies.org/resource/10668/dog_nutrition_final_fix.pdf

60.   Defendant intended that consumers would rely on their marketing and recommendations concerning the general ability of its dog food to meet consumers' dogs' nutritional needs.

61.   Defendant's recommended dog food formulations are grossly out of line with nutritional needs of such dogs because they contain excessive levels of fat that can cause serious medical issues.

62.   It is reasonably foreseeable that the excessively high fat content in Defendant's dog food would present serious health risks to dogs that would otherwise remain healthy on another dog food with a more typical fat content.

63.   Despite this reasonably foreseeable risk, Defendant marketed, offered for sale, and recommended its dog foods to the general public as suitable for all dogs whose basic information, such as breed, age, and weight, was entered on their website and did not provide any warnings about the risk of acute pancreatitis or alternative formulations for dogs that might be more susceptible to acute pancreatitis.

64.   Defendant has been on notice of the serious health risks caused specifically by the high fat content in its dog food, evidenced by numerous complaints online and directed to Defendant.

65.   Defendant posted an article on its website on February 22, 2021, titled, "What to Know About Pancreatitis in Dogs," in which Defendant affirmatively denies that high-fat diets increase risk of pancreatitis.[28] Defendant has thus been on notice since as early as 2021 that the fat content in its dog food is associated with increased risk of pancreatitis and has continued to mispresent, conceal, and omit material information about this link from consumers.

---

[28] https://www.thefarmersdog.com/digest/pancreatitis-in-dogs/

66.     Defendant's misrepresentations, concealment, and omissions were willful, wanton, and malicious, as Defendant knew of the risks associated with the high fat content in its dog food and yet affirmatively denied that these risks existed.

67.     Defendant's dog food does not conform to Defendant's express warranties as to its general ability to meet dogs' nutritional needs.

68.     Defendant's dog food does not conform to Defendant's implied warranties as to its general fitness as a dog food.

69.     Defendant misrepresented, concealed, and omitted material information about their dog food's general ability to meet dogs' nutritional needs to induce consumers into purchasing the dog food.

70.     Defendant's fraudulent conduct was intended to and did increase the perceived value of their dog food to reasonable consumers, thus increasing the price for all consumers.

### PLAINTIFF ALLEGATIONS

71.     Plaintiff Amy Trott is a citizen and resident of New Hampshire.

72.     Plaintiff purchased 14 days of Farmer's Dog food in June 2025 for $27.26 for her two-year-old labrador retriever named Mya.

73.     Plaintiff decided to purchase Farmer's Dog food after seeing an advertisement on Facebook which said that Farmer's Dog food is nutritious and healthy.

74.     Plaintiff received the chicken & grain, beef, and turkey recipes.

75.     Plaintiff's dog did not like the food and would not eat it, so Defendant provided Plaintiff with a partial refund of $9.

76.     That a dog food is generally able to meet their dog's nutritional needs is material to Plaintiff.

12

77. Defendant intended that Plaintiff would rely on their marketing and recommendations concerning the general ability of its dog food to meet their dog's nutritional needs.

78. Defendant's recommended dog food formulations are grossly out of line with nutritional needs of Plaintiff's dog because they contain excessive levels of fat that can cause serious medical issues.

79. The dog food Plaintiff purchased from Defendant did not conform to Defendant's express warranties as to its general ability to meet dogs' nutritional needs.

80. The dog food Plaintiff purchased from Defendant did not conform to Defendant's implied warranties as to its general fitness as a dog food.

81. Defendant's misrepresentation, concealment, and omission of material information about their dog food's general ability to meet dogs' nutritional needs induced Plaintiff into purchasing the dog food.

82. Defendant's fraudulent conduct increased the perceived value of their dog food to Plaintiff.

83. Had Plaintiff known that Defendant's dog food was grossly out of line with their dog's nutritional needs, despite having entered their dog's information on Defendant's website and Defendant's website recommending dog food formulations designed by on-staff nutritionists, Plaintiff would not have purchased the dog food or would have only paid substantially less for it.

84. Plaintiff sent notice of her claims to Defendant via letter on April 8, 2026.

## CLASS ALLEGATIONS

85. This action is brought as a class action under Fed. R. Civ. P. 23.

86. The Class is defined as follows:

**Nationwide Class:** All persons in the United States who purchased Defendant's dog food.

**New Hampshire Subclass:** All persons in New Hampshire who purchased Defendant's dog food.

87.    The Class excludes the following: Defendant, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

88.    The Class definition may be modified based upon discovery and further investigation.

89.    *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class may be ascertained through discovery of records from Defendant and third parties.

90.    *Commonality*: There are questions of law or fact common to the Class, including, without limitation, whether Defendant engaged in unlawful conduct that entitles Plaintiff and Class members to relief.

91.    *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

92.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the interests of the Class. Plaintiff's counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

93.    *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendant and depend on the same determinations of law and fact. A

14

class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

94. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

95. Defendant's unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

96. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(on behalf of Plaintiff and the Class)**

97. All preceding paragraphs are incorporated by reference as though fully set forth herein.

15

98. Defendant's representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[29]

99. Defendant's dog food fails to conform to Defendant's representations that formed part of the basis of the bargain.

100. Defendant breached the warranty because they were unwilling or unable to provide a remedy within a reasonable time, and any attempt to provide a remedy has been ineffective.

101. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

102. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendant knowingly sold a dangerous and unhealthy dog food without disclosing it to consumers;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and Class members;

c. Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

---

[29] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

103.    The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

104.    Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(on behalf of Plaintiff and the Class)**

106.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

107.    The sale of Defendant's dog food created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[30]

108.    Defendant's dog food is unmerchantable because it is grossly out of line with the nutritional needs of Plaintiff and Class members' dogs.

---

[30] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

109. Defendant breached the warranty because they were unwilling or unable to provide a remedy within a reasonable time, and any attempt to provide a remedy has been ineffective.

110. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

111. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

  a. Defendant knowingly sold a dangerous and unhealthy dog food without disclosing it to consumers;

  b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and Class members;

  c. Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

  d. A gross disparity in bargaining power existed between the parties.

112. The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

113. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

114. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT III
### FRAUD
**(on behalf of Plaintiff and the Class)**

115. All preceding paragraphs are incorporated by reference as though fully set forth herein.

116. Defendant marketed their dog food as generally able to meet the nutritional needs of dogs when the dog's information is entered on their website.

117. That a dog food is generally able to meet their dog's nutritional needs is material to reasonable consumers.

118. Defendant intended that consumers would rely on their marketing and recommendations concerning the general ability of its dog food to meet consumers' dogs' nutritional needs.

119. Defendant's recommended dog food formulations are grossly out of line with nutritional needs of such dogs because they contain excessive levels of fat that can cause serious medical issues.

120. Defendant misrepresented, concealed, and omitted material information about their dog food's general ability to meet dogs' nutritional needs to induce consumers into purchasing the dog food.

121. Defendant's fraudulent conduct was intended to and did increase the perceived value of their dog food to reasonable consumers, thus increasing the price for all consumers.

122. Plaintiff and Class members reasonably and justifiably relied on Defendant's misrepresentation, concealment, and omission of material information when purchasing Defendant's dog food.

123. If Plaintiff and Class members knew that Defendant's recommended dog food formulations were grossly out of line with nutritional needs of their dogs, they would not have purchased the dog food or would have only paid substantially less for it.

124. Defendant acted in bad faith and with intent to defraud because:

a. Defendant sold Defendant's dog food to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

19

b. Defendant sold Defendant's dog food to Plaintiff and Class members with intent to not provide a remedy for their fraudulent conduct; and

c. Defendant sought to unjustly enrich themselves to the detriment of Plaintiff and Class members.

125. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT IV**
**VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT**
**N.H. Rev. Stat. § 358-A:1, *et seq.***
**(on behalf of Plaintiff and the Class)**

126. All preceding paragraphs are incorporated by reference as though fully set forth herein.

127. Defendant marketed their dog food as generally able to meet the nutritional needs of dogs when the dog's information is entered on their website.

128. That a dog food is generally able to meet their dog's nutritional needs is material to reasonable consumers.

129. Defendant intended that consumers would rely on their marketing and recommendations concerning the general ability of its dog food to meet consumers' dogs' nutritional needs.

130. Defendant's recommended dog food formulations are grossly out of line with nutritional needs of such dogs because they contain excessive levels of fat that can cause serious medical issues.

131. Defendant misrepresented, concealed, and omitted material information about their dog food's general ability to meet dogs' nutritional needs to induce consumers into purchasing the dog food.

20

132. Defendant's fraudulent conduct was intended to and did increase the perceived value of their dog food to reasonable consumers, thus increasing the price for all consumers.

133. Plaintiff and Class members reasonably and justifiably relied on Defendant's misrepresentation, concealment, and omission of material information when purchasing Defendant's dog food.

134. If Plaintiff and Class members knew that Defendant's recommended dog food formulations were grossly out of line with nutritional needs of their dogs, they would not have purchased the dog food or would have only paid substantially less for it.

135. Defendant acted in bad faith and with intent to defraud because:

    a. Defendant sold Defendant's dog food to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

    b. Defendant sold Defendant's dog food to Plaintiff and Class members with intent to not provide a remedy for their fraudulent conduct; and

    c. Defendant sought to unjustly enrich themselves to the detriment of Plaintiff and Class members.

136. Defendant's conduct constitutes deceptive and unfair trade practices.

137. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the following relief is requested:

    a. An order certifying this action as a class action.

    b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

    c. An order enjoining Defendant's unlawful conduct.

d.       An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e.       An award of interest as provided by law, including pre-judgment and post-judgment interest.

f.       Such other and further relief as this Court may deem just, equitable, or proper.

## <u>JURY DEMAND</u>

Trial by jury is demanded.

Dated: April 24, 2026

Respectfully submitted,

*/s/ Michael M. Weinkowitz*

Michael M. Weinkowitz
Daniel C. Levin *
Nicholas J. Elia *
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
mweinkowitz@lfsblaw.com
dlevin@lfsblaw.com
nelia@lfsblaw.com

D. Aaron Rihn *
Sara Watkins *
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel: (844) 383-0565
arihn@peircelaw.com
swatkins@peircelaw.com

*Attorneys for Plaintiff and the Class*

*\* Pro hac vice forthcoming*

22